

**FILED & ENTERED**

**JUN 08 2010**

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY ngo          DEPUTY CLERK**

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>Angie M Garcia,<br><br><br><br><br><br><br>Debtor(s). | Case No: 8:10-bk-10096-TA<br><br>Chapter: 7<br><br>STATEMENT OF DECISION ON DEBTOR'S MOTION TO AVOID LIEN<br><br>Date:      April 27, 2010<br>Time:      10:00 a.m.<br>Location: 5B |

    This matter came on for hearing on Debtor's motion to avoid the non-possessory, non-purchase money lien of Orange County Credit Union in a 2001 Mercedes Benz automobile. Prior to the hearing the court published its tentative decision, which is incorporated herein by reference and is repeated *verbatim* below:

    This is the debtor's motion to avoid the non-purchase money security interest of Orange County Credit Union in a 2001 Mercedes Benz automobile. Debtor seeks to employ 11 U.S.C. §522(f), which provides, in pertinent part, that a debtor may avoid a non-possessory, non-purchase money security interest in certain defined kinds of property *to the extent that the lien impairs a valid*

- 1 -

*exemption* claimed in that property. The portion of §522(f) pertinent here is "(B)(ii) implements, professional books, or tools, of the trade of the debtor…"  Debtor argues that the Mercedes is a "tool of the trade" considering debtor is a realtor.  This may or may not be true depending on whether one looks to California to define "tools of the trade" or to federal law.   But there is a more basic problem.  The only exemption claimed by debtor is listed under Schedule "C" by reference to CCP §703.140(b)(5), which therefore defines the outer limit of §522(f)'s application.  Section 703.140(b)(5) allows $925 plus any unused portion of the grubstake exemption "in any property."  The value of the claimed exemption is listed on Schedule "C" as $5350.

But the issue is not just whether California recognizes an exemption here.  The real issue is whether it is the kind of exemption that can then be used to avoid a voluntary, non-purchase money lien.  The Court is not convinced that the California grubstake can be imported into an application against vehicles through §522(f) under the argument that vehicles can be "tools of the trade" under California exemption law.  Section 522(f)(1) does not permit just any state exemption in any property in any amount.  Instead, the federal statute is very narrow on exactly what sorts of property and security interests are subject to the avoidance power.  At §522(f)(3)(B), it is clarified that to the extent the exemption law in "opt-out" states would allow an exemption unlimited in amount, there is still a $5,475 cap insofar as the attempt is made to avoid the lien in "tools of the trade."  The dollar amount is not important; what is important is that "tools of the

trade" appears to be separately defined for purposes of the federal statute. Motor Vehicles are conspicuously absent from the description of items listed in §522(f)(1)(B) or (3)(B). Although vehicles are or can be included within the general definition of property "necessary to and used in exercise of trade, business or profession" in California exemption law under CCP §704.060(a), this was not the section utilized by debtor to claim her exemption under Schedule "C"; instead, debtor is trying to "back into" the use of the avoidance section by reference to California's grubstake exemption. More importantly, the federal statute seems to have its own definition of tools of the trade. Some courts have interpreted the language of the federal statute regarding "tools of the trade" specifically **not** to apply to vehicles since elsewhere within the same statute at §522(d)(2) motor vehicles are separately and distinctly referenced. *In re Harrell,* 72 B.R. 107, 110-11 (Bankr. N.D. Ala. 1987). " 'Tool' as used in this context implies "a manually operated device, such as a carpenter's hammer or a mechanic's wrench…the primary purpose of that section was to prevent overreaching by creditors who take a security interest in the kinds of items specified in §522(f)(2) in order to coerce the debtor, by threatening to repossess the collateral, into making the scheduled payments…Congress recognized that such items of collateral are, by their nature, necessary for the debtor's fresh start, that they generally have very little resale value, and are thus practically worthless in the hands of the creditor…" *Id.* at 111 *citing* H.Rep. No. 95-595, p. 127-27, 95th Cong.2d Sess. (1987).

There are lines of cases on both sides of this issue[1]. Of particular interest is *In re McNutt,* 87 B.R. 84 (9th Cir BAP 1988), where the Ninth Circuit BAP decided that a truck used in the debtor's drywall business was a "tool of the trade" and thus eligible for the lien avoidance provisions of §522(f). The Ninth Circuit BAP went to some lengths to distinguish and criticize the 7th Circuit in *In re Patterson*, 825 F. 2d 11140 (7th Cir. 1987) and noted that the issue is both a factual and a legal one. *McNutt*, 87 B.R. at 87. The Court, however, is not prepared to go as far as this debtor wants here for two reasons:

---

[1] Among those cases holding or acknowledging that a motor vehicle (or motorized farm machinery) may in some instances be a tool of the trade under 11 U.S.C. § 522(d)(6), 11 U.S.C. § 522(f)(2)(B), or applicable state law, are: *In re LaFond,* 791 F.2d 623 (8th Cir.1986); *In re Smith,* 68 B.R. 581 (Bankr.D.Minn.1986); *In re Weinstein,* 44 B.R. 987 (Bankr.E.D.Pa.1984); *In re Dempsey,* 39 B.R. 561 (Bankr.E.D.Pa.1984); *In re Schneider,* 37 B.R. 747 (Bankr.N.D.Ga.1984); *In re Langley,* 21 B.R. 772 (Bankr.D.Me.1982); *In re Reed,* 18 B.R. 1009 (Bankr.W.D.Ky.1982); *In re Dillon,* 18 B.R. 252 (Bankr.E.D.Cal.1982); *In re Eagan,* 16 B.R. 439 (Bankr.N.D.N.Y.1982); *In re Goosey,* 10 B.R. 285 (Bankr.D.Neb.1981); *In re Damron,* 5 B.R. 357 (Bankr.W.D.Ky.1980); In re Dubrock, 5 B.R. 353 (Bankr.W.D.Ky.1980); and *In re Meyers,* 2 B.R. 603 (Bankr.E.D.Mich.1980).

Among those cases holding or opining that a motor vehicle or motorized farm machinery is by definition not a tool of the trade are: *In re Patterson,* 825 F.2d 1140 (7th Cir.1987); *In re Nowak,* 48 B.R. 290 (W.D.Wis.1984); *In re Harrell*, *72 B.R. 107 (Bankr.N.D.Ala.*1987); *In re Trainer,* 56 B.R. 21 (Bankr.S.D.Tx.1985); *In re Ramey,* 45 B.R. 562 (Bankr.W.D.Va.1984); *In re Curry,* 18 B.R. 358 (Bankr.N.D.Ga.1982); *In re Steele,* 8 B.R. 94 (Bankr.S.D.1980); and *In re Sweeney,* 7 B.R. 814 (Bankr.E.D.Wis.1980) (dicta).

**First**, this debtor did not invoke an exemption in a motor vehicle, or even a tool of the trade, but instead she invoked a grubstake exemption.  To allow this to also suffice for purposes of lien avoidance is to say that in California there are simply no limits beneath about $19,000 to the lien avoidance powers in non-possessory, non-purchase money security interests.  The Court doubts this is what Congress had in mind.

**Second,** some deference must be given to the legislative history as noted in *Harrell*.  The original purpose was to discourage overreaching creditor leverage over items of collateral with little or no resale value, but vital to the debtor's fresh start. It is one thing to say that a tractor or a truck might be a tool of the trade, or that other kinds of expensive machinery might also be.  But to extend this concept further still to luxury automobiles like a Mercedes Benz that *are* readily re-saleable under the argument that realtors drive their prospective customers around and want to make an impression, is going too far in this Court's view.  Presumably, stock brokers also want to make an impression, or, for that matter, any professional, executive or entrepreneur.  Shall we soon see motions to avoid liens in expensive automobiles, or party boats and even country club memberships, or any other luxury that is susceptible to financing?  The Court is not prepared to go this far under a "tool of the trade" or grubstake rubric absent a better showing of either legislative intent or binding authority.

*Deny*

At the invitation of the court, the parties have submitted their further briefs. After reviewing the briefs and carefully considering the matter, the Court is persuaded that its decision as announced in the tentative was correct for not only those reasons but further, as discussed below. It must be remembered that 11 U.S.C. §522(f) does not purport to govern what may be claimed as exempt in an opt-out state such as California. Rather, it provides that if certain kinds of property are validly claimed as exempt, then to the extent that those items also meet the narrowly-defined categories of property set forth in §522(f), the non-possessory, non-purchase money liens thereon may be avoided within certain limits. One enumerated category in §522(f)(1)(B)(ii) is "tools of the trade of the debtor…." On debtor's Schedule "C," she does not specifically claim "tools of the trade," nor does she even invoke one of California's versions of this phrase which is slightly different, found at CCP §704.060(a)(1), i.e.:

> Tools, implements, instruments, materials, uniforms, furnishings, books, equipment, *one commercial motor vehicle*…to the extent that the aggregate does not exceed (1) six thousand seventy-five dollars ($6,075), if reasonably necessary to and actually used by the judgment debtor in the exercise of the trade, business, or profession by which the judgment debtor earns a livelihood… (emphasis added)

Rather, debtor invokes the "grubstake" found at CCP §703.140(b)(5) which affords a floating exemption "in any property" up to the unused portion of the homestead exemption found in (b)(1) of the same section. Specifically and separately enumerated are subsections (b)(6) which affords $1,750 in "tools of the trade" and (b)(2) another separate sum "in one motor vehicle."

But particularly noteworthy is that the CCP§703.140(b) schedule of exemptions may be elected "in lieu of all other exemptions provided by this chapter…" CCP §703.140(a). The

reference to an automobile under California law exemptible if used "in the exercise of the trade, business or profession…" appears in another portion entirely of the California exemptions chapter, i.e. Article 3 at §704.060, and so is therefore outside of the grubstake. So, even under California's scheme, a debtor may elect the grubstake (as debtor did here) but not simultaneously the generous definition at §704.060 which readily accepts a "commercial" motor vehicle as a property "used in the exercise of the trade, business or profession." This is not mere mincing of words. Rather, this discussion is intended to highlight that even under California law, the grubstake, "motor vehicle," "tools of the trade," all found in §703.140(b) and "commercial motor vehicle …used in the exercise of a trade, business or profession" found at §704.060, are separately defined, have separate meanings, represent separate and distinct approaches to exemptions and are not necessarily interchangeable.

But even more persuasive to the Court is the rather narrow definition found in the federal statute at 11 U.S.C. §522(f)(1)(B). Although "tools of the trade" are specifically described at subsection (ii), "motor vehicles" conspicuously are not found anywhere within the lien avoidance subsections. This is noteworthy in that "motor vehicles" are specifically called out at other places in the statute, for example at §522(d)(2). This implies to the Court that motor vehicles were specifically not within the contemplation of Congress when considering non-possessory, non-purchase money lien avoidance. *See In re Harrell*, 72 B.R.107, 110-11 (Bankr. N.D.Ala.1987). It deserves repeating; this is not a question of what property may be exempted, which in opt-out states clearly is a question of the state's separate definitions. Rather, it is a question of what subset of exemptible property *may also be the subject of lien avoidance*, which requires an interpretation of the federal statutory language. The Court is

- 7 -

persuaded that Congress did not intend to extend this power to avoiding liens on automobiles. When added to the legislative history discussed in the tentative regarding the purposes behind avoiding liens in tools of the trade [*see* H.R. Rep. No. 95-595, at 127-27 , cited in *Harrell* 72 B.R. at 111], it becomes clear to the Court that the tentative was correct.

Therefore, the motion to avoid the non-possessory, non-purchase money lien in the vehicle is denied. As necessary, this statement of decision shall also serve as findings in the case. Orange County Credit Union is directed to submit an order consistent with this decision.

###

DATED: June 8, 2010

_____
Theodor C. Albert
United States Bankruptcy Judge

- 8 -

**NOTE TO USERS OF THIS FORM**:
**1)** Attach this form to the last page of a proposed Order or Judgment. Do not file as a separate document.
**2)** The title of the judgment or order and all service information must be filled in by the party lodging the order.
**3) Category I.** below: The United States trustee and case trustee (if any) will always be in this category.
**4**) **Category II.** below: List ONLY addresses for debtor (and attorney), movant (or attorney) and person/entity (or attorney) who filed an opposition to the requested relief. DO NOT list an address if person/entity is listed in category I.

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*) STATEMENT OF DECISION ON DEBTOR'S MOTION TO AVOID LIEN was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner indicated below:

**I. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order. As of June 8, 2010, the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below.

Anerio V Altman    lawclerklojls@cox.net
Charles W Daff    cdaff@epiqtrustee.com, cdaff@ecf.epiqsystems.com
Jason E Goldstein    jgoldstein@buchalter.com, bkgroup@buchalter.com
United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
Joseph M Welch    jwelch@buchalter.com

☐ Service information continued on attached page

**II. SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order was sent by U.S. Mail to the following person(s) and/or entity(ies) at the address(es) indicated below:

Angie M Garcia
1133 Buckingham, Unit D
Costa Mesa, CA 92626

☐ Service information continued on attached page

**III. TO BE SERVED BY THE LODGING PARTY**: Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s) and/or email address(es) indicated below:

☐ Service information continued on attached page

- 9